UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| BOBBY DUANE JOHNSON, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | No. 1:19CV27 HEA |
|  | ) |  |
| TOMMY GREENWELL, | ) |  |
|  | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION, MEMORANDUM AND ORDER

This matter comes before the Court on the motion of plaintiff Bobby Duane Johnson for leave to commence this civil action without prepayment of the filing fee. (Docket No. 3). Having reviewed the motion and the financial information submitted in support, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee and will assess an initial partial filing fee of $10.50. *See* 28 U.S.C. § 1915(b)(1). Additionally, for the reasons discussed below, the Court will dismiss plaintiff's complaint without prejudice.

## 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these

monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10.00, until the filing fee is fully paid. *Id*.

In support of his motion to proceed in forma pauperis, plaintiff submitted a copy of his certified inmate account statement. (Docket No. 4). The inmate account statement showed an average monthly deposit of $52.50. The Court will therefore assess an initial partial filing fee of $10.50, which is 20 percent of plaintiff's average monthly deposit.

## Legal Standard on Initial Review

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true, but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction"

means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

**The Complaint**

Plaintiff is currently incarcerated at the Pemiscot County Jail in Caruthersville, Missouri. He brings this action pursuant to 42 U.S.C. § 1983 naming Sheriff Tommy Greenwell as the sole defendant. (Docket No. 1 at 2). Sheriff Greenwell is sued in both his official and individual capacity.

Plaintiff states that on August 7, 2018, his attorney "had [him] plead guilty to 4 years in prison." (Docket No. 1 at 3).[1] On August 10, 2018, Sheriff Greenwell had his "transportation driver take him to Bonne Terre prison," presumably meaning the Eastern Reception, Diagnostic and Correctional Center. Plaintiff was returned to Pemiscot County pursuant to a writ of habeas corpus ad prosequendum on November 1, 2018. Thereafter, on November 6, 2018, Judge Copeland allegedly told plaintiff that "what they had [him] plead to back in August was not even

---

[1] Plaintiff's state court case is *State of Missouri v. Johnson*, No. 17PE-CR00218-01 (34th Cir., Pemiscot County). He was initially charged by information with one count of first-degree child molestation and five counts of first-degree statutory sodomy. The second amended information currently before the state court consists of a single charge of second-degree statutory sodomy.

3

a crime at the time [his] alleged crime happened." Plaintiff states that his sentence was then set aside. He indicates that this occurred pursuant to Missouri Supreme Court Rule 29.13. (Docket No. 11 at 1).[2]

Plaintiff asserts that the ninety days he spent in prison in Bonne Terre amounted to an illegal detention. He further states that on November 20, 2018, his attorney "tried to punish [him] for [their] mistakes by trying to have [him] plead guilty to a higher crime." (Docket No. 1 at 3-4). When plaintiff asked why he should be punished for the mistakes of others, he was told that "we will take you to trial." (Docket No. 1 at 4). Plaintiff claims that he is going to be sentenced twice for the same crime, thereby violating the Double Jeopardy Clause of the United States Constitution. (Docket No. 1 at 4, 6).

Since filing his complaint on February 7, 2019, plaintiff has submitted a number of supplements, which he refers to as appendices. These documents will be treated as part of the pleading. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is part of the pleading for all purposes").

In the first supplement, plaintiff alleges that his attorney, Daniel Cornacchione, "is very clearly trying to circumvent the Double Jeopardy Clause…by illegally trying to change the case number." (Docket No. 8 at 1). He states that his attorney's conduct is "very unprofessional and unethical" and must not be allowed to stand. Attached to the supplement is a document marked Appendix B, which is a letter from plaintiff's attorney advising him of an upcoming court date. (Docket No. 8 at 2).

---

[2] The rule provides, in relevant part: "Within thirty days after the entry of the judgment and prior to the filing of the transcript of the record in the appellate court, the court may of its own initiative or on motion of a defendant arrest or set aside a judgment upon either of the following grounds: (1) that the facts stated in the indictment or information do not constitute an offense; or (2) that the court is without jurisdiction of the offense charged." Mo. S.Ct. R. 29.13(a). Upon reviewing plaintiff's case on Case.net, Missouri's online case management system, the Court was unable to locate the order setting aside plaintiff's judgment.

The second supplement is a judgment, marked Appendix D,[3] in *State of Missouri v. Johnson*, No. 18PE-CR00007-01 (34th Cir., Pemiscot County). (Docket No. 9 at 1). The judgment indicates that plaintiff pled guilty to a charge of felony failure to appear on August 7, 2018 and was subsequently sentenced to four years of incarceration. Also attached to the supplement is Appendix E, a printout of a writ of habeas corpus ad prosequendum in *State of Missouri v. Johnson*, No. 17PE-CR00218-01 (34th Cir., Pemiscot County). (Docket No. 9 at 3). The writ directs the Missouri Department of Corrections to allow plaintiff to attend a November 6, 2018 hearing in Pemiscot County.

In the third supplement, plaintiff states that his judgment was set aside pursuant to Missouri Supreme Court Rule 29.13. (Docket No. 11 at 1). Pursuant to this rule, plaintiff claims that he "shall" be discharged unless the court finds there are reasonable grounds to believe he can be convicted of an offense if properly charged. However, plaintiff states that he has not been properly charged. Moreover, he asserts that Rule 29.13 has a thirty-day time limit that has been exceeded. As such, plaintiff seeks his immediate release. (Docket No. 11 at 2). Attached to the third supplement are copies of Appendices D and E. (Docket No. 11 at 3-5).

Plaintiff's fourth supplement states that he is being retaliated against by Pemiscot County Jail Administrator Torrance Akins because of this lawsuit and because of the lawsuit he is planning against Akins himself. (Docket No. 12 at 1). The nature of this alleged retaliation is not described. Plaintiff also complains that Judge Reeves is allowing the prosecutor who was removed from his case to choose a special prosecutor. He further asserts that he has given Judge

---

[3] In a letter to the Court filed on March 4, 2019, plaintiff states that he has enclosed both Appendix B, which is the letter from attorney Daniel Cornacchione, and Appendix C. (Docket No. 7). There is no document specifically marked Appendix C and he does not describe its contents. However, included in the letter to the Court is a letter that plaintiff purportedly wrote to Judge Reeves on February 25, 2019, which may be the Appendix C to which plaintiff refers. The letter to Judge Reeves requests that Judge Reeves place plaintiff's formal opposition to any change in case number on the record. (Docket No. 7 at 3).

Reeves "more than enough on the Double Jeopardy issue to dismiss all charges." Attached to the fourth supplement is a letter to Judge Reeves marked Appendix F. (Docket No. 12 at 2). In the letter, plaintiff insists that his rights under the Double Jeopardy Clause have been violated and that his charges should be dismissed.

Plaintiff's fifth supplement is a document marked as Appendix G. (Docket No. 13 at 1). In Appendix G, plaintiff states that he was assaulted by an inmate at the Pemiscot County Jail. He claims that the inmate was not supposed to be in his pod, but that Jail Administrator Torrance Akins placed him there. He further alleges that Jail Administrator Akins placed "someone else in the pod that's not supposed to be here [and] then told him [that] he (Torrance Akins) would not give him contraband because [plaintiff] had filed a grievance." According to plaintiff, this was done to have him assaulted.[4]

In his sixth supplement, plaintiff requests that the Court take jurisdiction of *State of Missouri v. Johnson*, No. 17-PE-CR00218 (34th Cir., Pemiscot County) from Judge Reeves based on an alleged violation of the Double Jeopardy Clause. (Docket No. 14 at 1). Attached to the sixth supplement is a document marked Appendix F, which is a letter to Judge Reeves dated May 13, 2019.[5] (Docket No. 14 at 2). In the letter, plaintiff expresses his desire that all charges against him be dismissed. He states that the Double Jeopardy Clause should protect him from the State

---

[4] Construed liberally, plaintiff appears to be attempting to assert a failure to protect claim against Torrance Akins. The Court, however, will not treat Jail Administrator Akins as a defendant. First, plaintiff has not named him in the complaint or the case caption. *See* Fed. R. Civ. P. 10(a) ("The title of the complaint must name all the parties"). Second, he has not sought leave to amend his complaint to add an additional defendant or an additional claim. Moreover, the claim against Jail Administrator Akins is not related to the claim against Sheriff Greenwell. *See* Fed. R. Civ. P. 20(a)(2). Finally, the Court notes that plaintiff has filed a separate lawsuit against Jail Administrator Akins. *See Johnson v. Akins*, No. 1:19-cv-00076-CDP (E.D. Mo.). Plaintiff will be able to bring any claims he has against Jail Administrator Akins in that case. *See* Fed. R. Civ. P. 18(a) (stating that "[a] party asserting a claim…may join, as independent or alternative claims, as many claims as it has against an opposing party").

[5] The Court notes that this is plaintiff's second Appendix F. Both documents marked as Appendix F purport to be letters from plaintiff to Judge Reeves. However, the letters are different.

6

of Missouri's repeated attempts to convict him. He further states that he should not be punished for the State's mistakes and that he should "be free to go." (Docket No. 14 at 3).

Plaintiff's seventh supplement is a document marked Appendix G.[6] (Docket No. 15 at 1). In Appendix G, plaintiff states that he was sentenced to two four-year prison terms on August 7, 2018, the sentences to run concurrently. He was placed into the custody of the Missouri Department of Corrections on August 10, 2018. On October 10, 2018, plaintiff received notice that he would have a parole hearing on December 12, 2018, with a decision six-to-eight weeks later. Plaintiff thus concludes that he would have received his parole on February 12, 2018. Instead, on November 1, 2018, plaintiff was brought back to Pemiscot County by the prosecutor. On November 6, 2018, Judge Copeland "vacated the sentence" in *State of Missouri v. Johnson*, No. 17PE-CR00218-01 (34th Cir., Pemiscot County). Plaintiff alleges that on November 20, 2018, the prosecutor tried to get him to plead guilty to the same offense with a new case number. Plaintiff refused, and the matter was set for trial. He asserts that the Double Jeopardy Clause is being violated because the State is trying to "resentence [him] for the same offense twice." (Docket No. 15 at 2-3).

Plaintiff seeks an order dismissing all charges against him and providing for his immediate release. (Docket No. 1-5 at 1). He also requests damages in the amount of $108,000 for the time he spent falsely imprisoned, and a further $300,000 for pain and suffering.

**Discussion**

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging that Sheriff Greenwell violated his constitutional rights by falsely taking him to prison on August 10, 2018. For the reasons discussed below, plaintiff's complaint must be dismissed for failure to state a claim.

---

[6] The Court notes that this is plaintiff's second Appendix G. Both documents marked as Appendix G are letters to the Clerk of Court. However, the letters are different.

### A. Official Capacity Claim Against Sheriff Greenwell

Plaintiff's claim against Sheriff Greenwell in his official capacity must be dismissed because he has not alleged that his constitutional rights were violated as the result of an unconstitutional policy, custom, or failure to train on the part of Pemiscot County.

In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *See White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). *See also Brewington v. Keener*, 902 F.3d 796, 800 (8th Cir. 2018) (explaining that official capacity suit against sheriff and his deputy "must be treated as a suit against the County"); *Kelly v. City of Omaha, Neb.*, 813 F.3d 1070, 1075 (8th Cir. 2016) (stating that a "plaintiff who sues public employees in their official, rather than individual, capacities sues only the public employer"); and *Elder-Keep v. Aksamit*, 460 F.3d 979, 986 (8th Cir. 2006) (stating that a "suit against a public official in his official capacity is actually a suit against the entity for which the official is an agent").

Sheriff Greenwell is alleged to be the Pemiscot County sheriff. An official capacity claim against him is really a claim against his employer. Thus, to state an official capacity claim, plaintiff must establish the liability of Pemiscot County.

A local governing body can be sued directly under § 1983. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). In order to prevail, the plaintiff must establish the governmental entity's liability for the alleged conduct. *Kelly*, 813 F.3d at 1075. Such liability may attach if the constitutional violation "resulted from (1) an official municipal policy, (2) an unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines*,

883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.*, 902 F.3d 745, 751 (8th Cir. 2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a theory of inadequate training, which is an extension of the same"). Thus, there are three ways in which plaintiff can potentially prove the liability of Pemiscot County.

First, plaintiff can show the existence of an unconstitutional policy. "Policy" refers to "official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.*, 829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.*, 420 F.3d 841, 847 (8th Cir. 2005) ("A policy is a deliberate choice to follow a course of action made from among various alternatives by the official or officials responsible…for establishing final policy with respect to the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face, but it is asserted that a municipality should have done more to prevent constitutional violations by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the inadequacies were a product of deliberate or conscious choice by the policymakers." *Id*. at 390.

Alternatively, plaintiff can establish a claim of liability based on an unconstitutional "custom." In order to do so, plaintiff must demonstrate:

1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;

2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

> 3) That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

Finally, plaintiff can assert a municipal liability claim by establishing a deliberately indifferent failure to train or supervise. To do so, plaintiff must allege a "pattern of similar constitutional violations by untrained employees." *S.M. v. Lincoln Cty.*, 874 F.3d 581, 585 (8th Cir. 2017).

A plaintiff does not need to specifically plead the existence of an unconstitutional policy or custom. *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004). However, at a minimum, the complaint must allege facts supporting the proposition that an unconstitutional policy or custom exists. *Doe ex rel. Doe v. Sch. Dist. of City of Norfolk*, 340 F.3d 605, 614 (8th Cir. 2003).

Here, plaintiff presents no facts supporting the existence of an unconstitutional policy or custom on the party of Pemiscot County. Furthermore, he fails to allege that his constitutional rights were violated due to Pemiscot County's failure to train or supervise its employees. As such, he has not stated a claim of municipal liability. *See Ulrich v. Pope Cty.*, 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Thus, plaintiff's official capacity claim against Sheriff Greenwell must be dismissed.

**B. Individual Capacity Claim Against Sheriff Greenwell**

Plaintiff's individual capacity claim against Sheriff Greenwell must be dismissed because plaintiff has not alleged Greenwell's personal responsibility for the alleged violation of his constitutional rights.

Liability in a § 1983 case is personal. *Frederick v. Motsinger*, 873 F.3d 641, 646 (8th Cir. 2017). In other words, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015). As such, § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). *See also Kohl v. Casson*, 5 F.3d 1141, 1149 (8th Cir. 1993) (dismissing plaintiff's excessive bail claims because none of the defendants set plaintiff's bail, and therefore, "there can be no causal connection between any action on the part of the defendants and any alleged deprivation" of plaintiff's rights).

Here, plaintiff alleges that his constitutional right to avoid being put twice in jeopardy for the same offense is being violated. Nowhere in the complaint, however, does plaintiff indicate how this is Sheriff Greenwell's fault. Specifically, plaintiff's allegations establish that Sheriff Greenwell's only role in his case was to provide transportation to and from prison. Indeed, Sheriff Greenwell is only mentioned once in the statement of claim and does not appear in any of plaintiff's seven supplements. Plaintiff does not allege that Sheriff Greenwell is responsible for or participated in his criminal case in any manner. That is, plaintiff does not allege that Sheriff Greenwell took any part in charging plaintiff, contributed to any proceedings, or made any legal decisions. Thus, plaintiff has failed to establish any link between Sheriff Greenwell and the alleged deprivation of his constitutional right. As such, plaintiff's individual capacity claim against Sheriff Greenwell must be dismissed.

**C. Other Claims**

Sheriff Greenwell is the only defendant named in the complaint and, as discussed above, plaintiff has failed to state a claim against him. However, the bulk of plaintiff's allegations are contained in seven supplemental filings, which include letters to the Court and various appendices. In these supplements, plaintiff asserts that his rights under the Double Jeopardy Clause were and are being violated. At various points, he mentions Judge Copeland, Judge Reeves, the prosecutor, and his defense attorney as being parties to this violation. To the extent that the supplements can be read as naming these individuals as defendants, plaintiff's allegations are nonetheless insufficient to state a claim. Moreover, to the extent that plaintiff is seeking immediate release, he cannot obtain such relief pursuant to 42 U.S.C. § 1983.

### i. Claim for Immediate Release

As part of his request for relief, plaintiff asks the Court to dismiss all charges against him and to order his immediate release from custody. (Docket No. 1-5 at 1). Such relief is not available to him in a § 1983 action. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). *See also Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release); and *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) (stating that when "a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action"). Thus, to the extent that plaintiff is seeking to be immediately released from state custody, he has failed to state a claim under § 1983.

### ii. Judge Copeland and Judge Reeves

Plaintiff cannot maintain an action under § 1983 against either Judge Copeland or Judge Reeves, because both are entitled to judicial immunity.

In general, a judge is immune from a suit for money damages. *Mireles v. Waco*, 502 U.S. 9, 9 (1991). This immunity from § 1983 actions bars a plaintiff's recovery in all but two narrow sets of circumstances. *Schottel v. Young*, 687 F.3d 370, 373 (8th Cir. 2012). First, a judge does not have immunity for non-judicial actions. *Duty v. City of Springdale, Ark.*, 42 F.3d 460, 462 (8th Cir. 1994). Second, a judge is not immune from lawsuits based on actions taken in the complete absence of jurisdiction. *Id*. This is the case even if the judge's actions were judicial in nature. *Schottel*, 687 F.3d at 373. "An act is a judicial act if it is one normally performed by a judge and if the complaining party is dealing with the judge in his judicial capacity." *Birch v. Mazander*, 678 F.2d 754, 756 (8th Cir. 1982). Judicial immunity applies even when the judge is accused of acting maliciously or corruptly. *Pierson v. Ray*, 386 U.S. 547, 554 (1967). *See also Woodworth v. Hulshof*, 891 F.3d 1083, 1090 (8th Cir. 2018) (stating that "judicial immunity is not overcome by allegations of bad faith or malice").

Plaintiff mentions Judge Copeland as the judge who set aside his judgment pursuant to Missouri Supreme Court Rule 29.13. Judge Reeves is the judge currently presiding over plaintiff's case. Plaintiff's supplements include letters that he has written to Judge Reeves seeking to have his charges dismissed pursuant to the Double Jeopardy Clause. However, Judge Reeves has not dismissed his charges or released him.

None of these factual assertions indicate that Judge Copeland or Judge Reeves acted in a nonjudicial manner or in the complete absence of jurisdiction. Therefore, they are entitled to judicial immunity from plaintiff's § 1983 action.

    **iii.**    **The Prosecutor**

Plaintiff cannot maintain an action against the prosecutor in his case because the prosecutor is entitled to immunity from § 1983 suit.

Prosecutors are immune from § 1983 liability so long as the actions complained of appear to be within the scope of prosecutorial duties. *Price v. Moody*, 677 F.2d 676, 677 (8th Cir. 1982). *See also Keating v. Martin*, 638 F.2d 1121, 1122 (8th Cir. 1980). The immunity enjoyed by prosecutors from § 1983 actions can be either absolute or qualified. *Brodnicki v. City of Omaha*, 75 F.3d 1261, 1266 (8th Cir. 1996). A prosecutor is entitled to absolute immunity if he or she is acting as an advocate for the State in a criminal prosecution. *Id*. On the other hand, a prosecutor is entitled to only qualified immunity when he or she pursues actions in an "investigatory" or "administrative" capacity. *Id*.

"Absolute immunity protects prosecutors against claims arising from their initiation of a prosecution and presenting a criminal case insofar as that conduct is intimately associated with the judicial phase of the criminal process." *Sample v. City of Woodbury*, 836 F.3d 913, 916 (8th Cir. 2016). This immunity depends on the functional nature of the prosecutor's activities; therefore, immunity is not defeated by "allegations of improper motive in the performance of prosecutorial functions." *Id*. Absolute immunity still applies even when there are allegations of malice, vindictiveness, or self-interest. *Reasonover v. City of St. Louis, Mo.*, 447 F.3d 569, 580 (8th Cir. 2006). Absolute immunity also "covers actions taken to initiate a prosecution, even if those actions are patently improper." *Saterdalen v. Spencer*, 725 F.3d 838, 842 (8th Cir. 2013).

Plaintiff states that after he pled guilty, was sentenced, and was transported to prison in Bonne Terre, the prosecutor had him returned to Pemiscot County on a writ of habeas corpus ad prosequendum. On November 6, 2018, plaintiff's judgment was set aside by Judge Copeland due to some defect. Afterwards, plaintiff claims that the prosecutor attempted to get him to plead

14

guilty to the same offense on which he had already been sentenced, which he believes violates the Double Jeopardy Clause. He thus asserts that he is being punished for the mistakes made by others, including the prosecutor.

These allegations encompass actions taken in the scope of the prosecutor's duties in presenting a criminal case to the court. Therefore, the prosecutor is immune from suit, even if his actions are improper, vindictive, self-interested, or malicious.

### iv. Attorney Daniel Cornacchione

Plaintiff cannot maintain an action against his attorney, Daniel Cornacchione, because a defense attorney is not suable under 42 U.S.C. § 1983. *See Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981) (stating that "a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"); *Meyers v. Vogal*, 960 F.2d 750, 750 (8th Cir. 1992) (stating that attorneys who represented plaintiff, "whether appointed or retained, did not act under color of state law and, thus, are not subject to suit under section 1983"); and *Rogers v. Bruntrager*, 841 F.2d 853, 856 (8th Cir. 1988) ("Public defenders do not act under color of state law for purposes of 42 U.S.C. § 1983 when performing the traditional functions of defense counsel").

Plaintiff variously accuses Attorney Cornacchione of trying to force him to plead guilty to cover his mistakes, of circumventing his constitutional rights, and of unprofessional and unethical conduct. A defense attorney, however, does not act under color of state law when performing the traditional functions of counsel in a criminal proceeding. This holds true even if the attorney works for the public defender's office or is appointed by the court. Therefore, plaintiff has failed to state a claim against Daniel Cornacchione. *See Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (explaining that to state a § 1983 claim, "a plaintiff must allege

sufficient facts to show (1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right").

### D. Motions to Appoint Counsel

Plaintiff has filed three motions to appoint counsel. (Docket Nos. 2, 6, 10). The motions will be denied as moot as plaintiff's complaint is being dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

### E. Motion to Order Pemiscot County to Relinquish Court Records

Plaintiff has filed a motion asking the Court to order Pemiscot County to relinquish a certified copy of the court records from April 5, 2018; June 19, 2018; August 7, 2018; November 6, 2018; and November 20, 2018. (Docket No. 5). The motion will be denied as moot as plaintiff's complaint is being dismissed for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis (Docket No. 3) is **GRANTED**.

**IT IS FURTHER ORDERED** that plaintiff must pay an initial partial filing fee of $10.50 within twenty-one (21) days of the date of this order. Plaintiff is instructed to make his remittance payable to "Clerk, United States District Court," and to include upon it: (1) his name; (2) his prison registration number; (3) the case number; and (4) the statement that the remittance is for an original proceeding.

**IT IS FURTHER ORDERED** that plaintiff's motions to appoint counsel (Docket Nos. 2, 6, 10) are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff's motion to order Pemiscot County to relinquish court records (Docket No. 5) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** without prejudice for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B). A separate order of dismissal will be entered herewith.

**IT IS FURTHER ORDERED** that an appeal from this dismissal would not be taken in good faith.

Dated this 3rd day of June, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE